UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ERIC CRUZ,

                Petitioner,

- against -

WILLIAM LEE, Superintendent,
Green Haven Correctional Facility

                Respondent.

12 Civ. 6119 (CS)(LMS)

**REPORT AND RECOMMENDATION**

**TO: THE HONORABLE CATHY SEIBEL, U.S.D.J.[1]**

On August 6, 2012, Petitioner Eric Cruz ("Petitioner"), filed a petition for a writ of habeas corpus ("the petition") pursuant to 28 U.S.C. § 2254, challenging his August 2, 2007, judgment of conviction for ten counts of Burglary in the Second Degree (NY Penal Law § 140.25), Unlawful Imprisonment in the Second Degree (NY Penal Law § 135.05), and two counts of Criminal Possession of Stolen Property in the Fifth Degree (NY Penal Law § 165.40), and his aggregate, indeterminate term of imprisonment of from 20 years to life. S. 18-20.[2] The petition asserts that trial counsel provided ineffective assistance. D.E. 1.

For the following reasons, I conclude, and respectfully recommend that Your Honor conclude, that this Petition should be dismissed in its entirety.

---

[1] On September 12, 2012, Petitioner's application was referred to this Court by the Honorable Cathy Seibel. D.E. 6.

[2] Numerals preceded by "S." refer to the transcript of Petitioner's sentencing.

## BACKGROUND

This Court has thoroughly reviewed (1) the transcript of Petitioner's trial and sentencing, (2) the state court filings in this case including Petitioner's NYCPL § 330.30 motion, direct appeal, and NYCPL § 440.10 motion, as well as the responses and state court decisions related to those filings (D.E. 12, Memorandum of Law and Exhibits), and (3) Respondent's Affidavit in Opposition to the petition, which includes a comprehensive factual recitation and procedural history (D.E. 11). Respondent's factual recitation and procedural history are materially consistent with the record. Accordingly, the Court adopts Respondent's factual recitation and procedural history, and assumes the reader's familiarity with the information contained therein.

Briefly stated, Petitioner was convicted of ten burglaries committed over the course of December of 2005 through January of 2006. The robberies involved the same *modus operandi*, whereby Petitioner and a co-defendant, Stanley Brewer, picked the front door lock of various apartments and left behind a piece of broken key in the lock. Various property was stolen from the apartments including jewelry, currency and electronics.

The evidence presented at trial included video surveillance depicting Petitioner and Brewer entering and exiting certain of the buildings in which the burglaries took place at or about the time of the burglaries. In one such video, Petitioner and Brewer can be seen leaving an apartment building holding a red bag that was later identified by a victim as having been stolen from his apartment. The evidence also included eyewitness identifications of Petitioner and testimony that Petitioner was present at the scene of certain of the burglaries at or about the time of the burglaries.

Additionally, at the time of Petitioner's arrest, he had in his possession a jewelry box, gold chains, watches, and a voice recorder that were later identified as belonging to a couple

whose apartment had been burglarized. The voice recorder contained voice recordings of one of the burglary victims. The couple also identified their daughter's hair band and son's sock, which were recovered from Brewer's person. Petitioner was also in possession of Romanian currency, which was later identified as belonging to a different burglary victim. Petitioner explained in a post-arrest statement that he was in possession of foreign currency for an upcoming trip to the "Dominican Republic" and that the foreign currency consisted of pesos. When a detective informed him that the currency was Romanian, Petitioner "was a little surprised and… laughed."

Pursuant to a search warrant, the police searched Petitioner's vehicle and recovered numerous keys, a metal strip, a torque wrench, three compact flash cards, a PC car adapter, a jewelry bag labeled "H. Stern," and a red canvas bag. The flash cards contained family pictures depicting the victim of a burglary. The police also recovered a business card from J&B Auto Repair. Jorge Batista, the owner of J&B Auto Repair, testified that he had a business relationship with Petitioner and Brewer for about six years. One of the burglary victims testified that a cellphone had been stolen from her apartment and that she learned from the phone company that a call had been made from the cellphone to J&B Auto Repair following the burglary. The victim had never heard of J&B Auto Repair and had not made that phone call.

Pursuant to a search warrant, the police also searched Petitioner's home and recovered an iPod inscribed with the words "Happy Birthday, Love Josie" on the back, a watch, foreign currency, a book entitled "Lock Picking for Spies, Cops and Locksmiths," and an electric lock picking tool. The watch and foreign currency were identified as belonging to one of the burglary victims. The iPod was identified as belonging to a different burglary victim. The police also recovered a left-handed black glove from the apartment of one of the burglary victims which did not belong to the victim and which matched in appearance a black glove recovered from

3

Brewer's person. A DNA profile was generated from a stain on the glove in the apartment; the fifteen alleles identified in the profile generated from the stain on the glove matched Petitioner's DNA profile and Petitioner could not be excluded as a DNA contributor. The likelihood of such a match was 1 in 7,163. Additionally, when the police questioned Petitioner and advised him that they were "investigating numerous burglaries that occurred within the city of Yonkers," he stated "You have to pay for your mistakes. You got me. You got me. What can I say?"

Following Petitioner's conviction and prior to his sentencing, Petitioner filed a NYCPL § 330.30 motion, which was adopted by new counsel. D.E. 12, Ex. 4. The motion alleged, in part, that Petitioner's trial counsel, of the Legal Aid Society, was ineffective because of a conflict of interest. Namely, according to Petitioner, at the time of Petitioner's trial, the Legal Aid Society also represented Jorge Guzman who, in March of 2006, had been charged with committing burglaries in and around the New Rochelle area, using the same method of entry as Petitioner. *Id.* This claim was based on a newspaper article that stated that Guzman was suspected of "as many as 30 pick-lock burglaries in the city," and had been arrested "with two metal picks that are used to jam locks." The article further stated that Guzman had a "blaze of white hair in [his] shortly cropped dark hair [which] made him distinctive to witnesses and on surveillance tapes." D.E. 12, Ex. 3. Petitioner asserted that he had advised his attorney of this information and had asked his attorney to conduct an "investigation to determine if any evidence would lead to the defense that another perpetrator, possibly one of his trial attorney's clients, was responsible for the burglaries," but no investigation was conducted. Petitioner further asserted that the arrest of Guzman undermined the People's *modus operandi* evidence and the assertion of prosecution witnesses that these distinctive burglaries ceased after Petitioner's arrest. D.E. 12, Ex. 4. By

4

decision and order dated July 19, 2007, the court denied Petitioner's claim on the ground that it was based on matters dehors the record and, therefore, was not cognizable. D.E. 12, Ex. 6.

After Petitioner was sentenced, he filed a direct appeal in the Appellate Division, Second Department, which raised, in part, the same ineffective assistance of counsel claim Petitioner had raised in his NYCPL § 330.30 motion. The Appellate Division denied the claim on the ground that "the defendant's arguments concerning an alleged conflict of interest and alleged ineffective assistance of counsel are based on matter dehors the record and, therefore, cannot be reviewed on direct appeal." *People v. Cruz*, 73 A.D.3d 1209 (2d Dept. 2010). An Associate Justice of the New York State Court of Appeals denied Petitioner's leave application. *People v. Cruz*, 15 N.Y.3d 850 (2010).

On November 24, 2010, Petitioner filed a NYCPL § 440.10 motion claiming, in part, ineffective assistance of counsel on the same ground that he previously raised in his NYCPL § 330.30 motion and in his direct appeal. D.E. 12, Ex. 11. In a Decision and Order dated January 4, 2012, the court denied Petitioner's motion on the ground that Petitioner's claim that he requested that counsel investigate Guzman's burglaries and that counsel failed to do so was "conclusory," "unsupported" and not "substantiated by any other affidavit or evidence, and therefore comport no reasonable possibility of truth as required by CPL 440.30(d)." The court further held that Petitioner failed to demonstrate that the conduct of his defense was affected by the alleged conflict or that the "conflict operated on the representation." Lastly, after recounting the evidence against Petitioner, the court held that there "is no valid basis to suggest that the Legal Aid Society as counsel to [Petitioner] had reason to believe that Guzman was a viable suspect in these burglaries" and, therefore, that "Legal Aid's representation of Guzman had no bearing on their representation of [Petitioner]." D.E. 12, Ex. 13. On June 13, 2012, the

5

Appellate Division denied Petitioner's application for leave to appeal from the denial of his NYCPL § 440.10 motion. D.E. 12, Ex. 14.

On August 6, 2012, Petitioner filed the instant petition in which he raises a single claim: "Count (1) Ineffective Assistance of Trial Counsel Due to an [sic] Conflict of Interest." D.E. 1. On November 19, 2012, Respondent filed an Affidavit in Opposition and Memorandum of Law. D.E. 11-12. On February 22, 2013, Petitioner filed a reply in which he argued that (1) his claim was incorrectly denied based on a state procedural bar, (2) the state court failed to acknowledge Petitioner's federal claim, and (3) his attorney operated under an actual conflict of interest due to his representation of Guzman which adversely affected Petitioner and prevented counsel from attempting to implicate Guzman in the burglaries. D.E. 24.

## DISCUSSION

### A. Applicable Law

"Habeas review is an extraordinary remedy." *Bousley v. United States*, 523 U.S. 614, 621 (1998), citing *Reed v. Farley*, 512 U.S. 339, 354 (1994). To be granted a writ of habeas corpus from a federal district court, a petitioner must fully and carefully comply with the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). A federal district court generally may hear an application for a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). When a state court has decided a claim on the merits, the federal court must apply AEDPA's deferential standard of review. *See Torres v. Berbary*, 340 F.3d 63, 68 (2d Cir. 2003). Under AEDPA,

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1)

6

>resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established Supreme Court precedent "if 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.' " *Torres*, 340 F.3d at 68 (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)).

"[A]n unreasonable application of clearly established Supreme Court precedent occurs when a state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Torres*, 340 F.3d at 68 (internal quotation marks and citation omitted). The federal court must determine whether the state court's application of clearly established federal law was objectively unreasonable. *Id.* at 68-69 (citation omitted). In the Second Circuit, "the objectively unreasonable standard of § 2254(d)(1) means that the petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." *Id.* (internal quotation marks and citations omitted).

### B. Petitioner's Habeas Claim

Petitioner claims, without any elaboration, that his trial counsel was ineffective based on a conflict of interest. D.E. 1. Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts requires a petitioner to "(1) specify all the grounds for relief available to the petitioner; [and] (2) state the facts supporting each ground[.]" *See also* 28 U.S.C.

7

§ 2242 (an application for a writ of habeas corpus "shall allege the facts concerning the applicant's commitment or detention[.]"). "It is well-settled in this Circuit that vague and conclusory allegations that are unsupported by specific factual averments are insufficient to state a viable claim for habeas relief." *Kombrough v. Bradt,* 949 F. Supp. 2d 341, 355 (N.D.N.Y. 2013), citing *Skeete v. New York,* No. 03 Civ. 2903, 2003 WL 22709079, at *2 (E.D.N.Y. Nov. 17, 2003) ("[V]ague, conclusory and unsupported claims do not advance a viable claim for habeas corpus relief."). Therefore, "a claim of ineffective assistance must contain specific factual contentions regarding how counsel was ineffective." *Id.* citing *Hall v. Phillips,* No. 04 Civ. 1514, 2007 WL 2156656, at *13 (E.D.N.Y. July 25, 2007) (the absence of allegations that demonstrate how counsel was ineffective is "fatal to an ineffective assistance claim on habeas" review); *Brown v. New York,* No. 04 Civ. 1087, 2006 WL 3085704, at *7 (E.D.N.Y. Oct. 30, 2006) (vague and conclusory allegations are insufficient to state a viable claim for habeas relief); *Hartley v. Senkowski,* No. 09 Civ. 395, 1992 WL 58766, at *2 (E.D.N.Y. Mar. 18, 1992) (considering the demanding standard to prove an ineffective assistance of counsel claim, "petitioner's vague and conclusory allegations that counsel did not prepare for trial or object to errors carry very little weight"). Here, the petition is devoid of any factual support or specificity. Petitioner does not allege how counsel's interests diverged from his own or that counsel failed to pursue an alternative defense as a result of the conflict. Since Petitioner has failed to allege a viable claim for relief, this Court concludes, and respectfully recommends that Your Honor conclude, that the petition should be denied.[3]

---

[3] Petitioner's reply sets forth a lengthy, multifaceted, and thorough explanation of his arguments. None of these arguments appear in the initial petition. Rather, the petition contains a single, conclusory, unsubstantiated claim that counsel was ineffective based on a conflict of interest. Therefore, the Court declines to review the arguments raised in Petitioner's reply. *See Evangelista v. Ashcroft,* 359 F.3d 145, fn. 4 (2d Cir. 2004); *Holguin v. Lee,* No. 13 Civ. 1492 (LGS)(JLC), 2014 WL 5508331, at *fn. 4 (S.D.N.Y. Oct. 31, 2014) ("as a general rule, a court

8

Alternatively, even if this Court were to (1) liberally construe the petition to implicitly raise the conflict of interest claim that Petitioner raised in his NYCPL § 440.10 motion, and/or (2) consider the arguments raised in Petitioner's reply, the state court's merit-based rejection of Petitioner's claim was not contrary to or an unreasonable application of Supreme Court precedent.[4]

"A defendant's Sixth Amendment right to effective assistance of counsel includes the right to representation by conflict-free counsel." *United States v. Cohan*, 798 F.3d 84, 88 (2d Cir. 2015) (quoting *LoCascio v. United States*, 395 F.3d 51, 56 (2d Cir. 2005)) (alteration omitted). The Second Circuit has "delineated three levels of conflicts of interest in evaluating this type of Sixth Amendment claim: (1) a *per se* conflict requiring automatic reversal without a showing of prejudice; (2) an actual conflict of interest that carries a presumption of prejudice; and (3) a potential conflict of interest that requires a finding of both deficient performance by counsel and prejudice, under the standard established in *Strickland v. Washington*, 466 U.S. 668, 688, 104

---

does not consider arguments raised for the first time in a reply brief"). Although the Court recognizes that Petitioner is proceeding *pro se* and that his filings are entitled to a liberal construction, it would be unfair to Respondent for this Court to review the numerous arguments raised in Petitioner's reply when Respondent has not had any opportunity to respond to those arguments.

[4] Petitioner asserts that the state court improperly relied on a state procedural bar to reject his claim. Specifically, Petitioner asserts that the state court improperly denied his claim based on NYCPL § 440.30(4)(d), and that the court's subsequent analysis was dicta. D.E. 24. Petitioner is mistaken. Preliminarily, there is a split of authority in the Second Circuit with respect to whether the denial of a motion pursuant to NYCPL § 440.30(4)(d) is merit-based or procedural. *See Chebere v. Phillips*, No. 04 Civ. 296 (LAP), 2013 WL 5273796, at *32 (S.D.N.Y., Sept. 18, 2013). Moreover, even assuming, *arguendo*, that the court's reliance on NYCPL § 440.30(4)(d) constituted reliance on a procedural bar and was not merit-based, the court cited that provision "without first establishing it was doing so in the alternative or making a clear statement it was relying on a state law ground." *Bethea v. Walsh*, No. 09 Civ. 5037 (NGG), 2016 WL 258639 (E.D.N.Y. 2016), citing *Galarza v. Keane*, 252 F.3d 630, 637 (2d Cir. 2001). The court then devoted the majority of its legal analysis to a merit-based analysis of Petitioner's arguments. Since the state court's decision is, at best, ambiguous with respect to whether it relied on a state procedural bar, the Court treats the state court decision as having been made on the merits.

9


S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *U.S. v. John Doe, No. 1,* 272 F.3d 116 (2d Cir. 2001), citing Armienti *v. United States,* 313 F.3d 807, 810 (2d Cir. 2002); *see Cuyler v. Sullivan,* 466 U.S. 335, 350 (1980).

An attorney operates under a per se conflict "(1) where trial counsel is not authorized to practice law or (2) where counsel is implicated in the crime for which the defendant is on trial." *John Doe No. 1,* 272 F.3d at 125. To obtain relief on the ground that counsel operated under a potential conflict, a petitioner must "demonstrate that [his or her attorney's] conduct fell below an objective standard of reasonableness and that, but for the deficient performance, the result of the trial would have been different." *Id.* at 126.

An actual conflict of interest exists where a petitioner demonstrates that "counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance'...." *Eisemann v. Herbert,* 401 F.3d 102, 107 (2d Cir. 2005), quoting *Strickland,* 466 U.S. at 687-688 (internal citation omitted). "These components are considered in a single, integrated inquiry." *Eisemann,* 401 F.3d at 108. This standard "is not properly read as requiring inquiry into actual conflict as something separate and apart from adverse effect." *Id.,* quoting *Mickens v. Taylor,* 535 U.S. 162, 172 n.5 (2002). To prove that a conflict adversely affected counsel's performance, "a defendant must demonstrate that some plausible alternative defense strategy or tactic might have been pursued, and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *United States v. Mappiedi,* 62 F.3d 465, 469 (2d Cir. 1995) (quoting *United States v. Levy,* 25 F.3d 146, 157 (2d Cir. 1994)) (internal quotation marks omitted). If a Petitioner makes this showing, prejudice is presumed. *Eisemann,* 401 F.3d at 107.

Here, Petitioner's claim – as incorporated into the instant petition from Petitioner's NYCPL § 440.10 motion and/or his reply – is that the Legal Aid Society was simultaneously representing him and another defendant, Jorge Guzman, who was charged with having committed a series of burglaries with a similar *modus operandi* to the burglaries with which Petitioner was charged. Petitioner asserts that he asked his attorney to investigate the charges against Guzman but that counsel failed to do so. Petitioner argues that the similarity in the manner of the burglaries yielded a viable defense that Guzman committed the burglaries. Accordingly, Petitioner claims that counsel operated under an actual conflict of interest that adversely impacted on his defense.

In rejecting this claim, the state court determined that Petitioner's motion contained "a number of unsupported facts… which are not facts substantiated by any other affidavit or evidence, and therefore, comport no reasonable possibility of truth as required by CPL 440.30(d). While [Petitioner] contends that he requested counsel to investigate the similarity of the Guzman burglaries, the allegation that the Legal Aid Society failed to conduct an investigation is conclusory and unsupported." D.E. 12, Ex. 13. The court further held that Petitioner failed to demonstrate that the "conduct of his defense was in fact affected by the operation of the conflict, or that the conflict operated on the representation." *Id.* Additionally, after listing the evidence against Petitioner, the court held as follows: "There is no valid basis to suggest that the Legal Aid Society as counsel to [Petitioner] had reason to believe that Guzman was a viable suspect in these burglaries. It follows therefore that Legal Aid's representation of Guzman had no bearing on their representation of [Petitioner]." *Id.* This finding by the state court was neither contrary to nor an unreasonable application of Supreme Court precedent.

11

Preliminarily, the state court's factual determination that Petitioner's claim was unsubstantiated and, therefore, does not provide a basis for relief, is entitled to a presumption of correctness, which Petitioner has failed to rebut with "clear and convincing evidence." 28 U.S.C. 2254(e)(1). There is no evidence in the record before this Court, other than Petitioner's own affidavits, which establishes whether the Legal Aid Society actually represented Guzman and, if so, in what capacity and during which time period. Further, the only details regarding the circumstances of Guzman's arrest and the crimes with which he was charged appear in a brief newspaper article which was highly reliant on hearsay. Lastly, even if the Legal Aid Society represented Guzman, since there is no evidence in the record that Petitioner attempted to obtain an affidavit from an attorney at the Legal Aid Society regarding this issue, it is entirely possible that the Legal Aid Society conducted the investigation that Petitioner claims that he sought, and determined that Guzman did not present a viable defense. Accordingly, the state court's determinations that Petitioner's claim was unsubstantiated and that his assertion that the Legal Aid Society failed to conduct an investigation was "conclusory and unsupported" were valid bases on which to deny his claim.

Additionally, the court's conclusion that the Legal Aid Society had no reason to believe that Guzman was a viable suspect and, therefore, that counsel's representation was not affected by the alleged conflict, was effectively a finding that counsel's representation was not "adversely affected" by an actual conflict. Accordingly, although the state court did not cite to federal law or specifically cite the federal standard, the standard on which the court relied was consistent with the federal standard. Moreover, the court's conclusion was an objectively reasonable application of that standard to the facts of this case.

Petitioner's argument is based on the notion that as a result of counsel's alleged conflict, counsel failed to raise the defense that Guzman committed the burglaries and, thereby, failed to undermine the People's *modus operandi* evidence. Critically, however, the *modus operandi* ascribed to Petitioner was that he left a broken key in the locks of the apartments he burglarized, whereas the newspaper article about Guzman made no mention of whether Guzman utilized this same *modus operandi*. Rather, the article simply stated that Guzman had been "arrested with two metal picks that are used to jam locks." D.E. 12, Ex. 11. Thus, the record does not reveal any basis for Petitioner's assertion that Guzman presented a viable avenue for Petitioner's trial counsel to undermine the People's *modus operandi* evidence.

Moreover, even if the *modus operandi* evidence were entirely excised from the record, the remaining evidence against Petitioner was overwhelming, directly tying him to the various burglaries, and largely excluding Guzman as the burglar. This evidence included video surveillance, eyewitness testimony, and DNA testing results. Further, property stolen from various burglary victims was found on Petitioner's person, in his car, and in his home. These proceeds included unique, readily identifiable items such as a personally inscribed iPod, a flash drive with pictures of a victim, a tape recorder with the sound of a victim's voice, and foreign currency. Petitioner also made a highly incriminating statement to the police. Additionally, Guzman did not match Petitioner's appearance and had a distinctive white streak in his hair. In light of the nature and quantum of this evidence, any argument by counsel that Guzman committed these burglaries would have been readily contradicted by the witnesses and surveillance footage, and would have been a feeble attempt, at best, to avoid the vast weight of highly incriminating evidence against Petitioner. Therefore, it would not have been a plausible

defense strategy for counsel to pursue a defense that Guzman was the burglar.[5] Accordingly, the state court's rejection of Petitioner's claim was not contrary to or an unreasonable application of Supreme Court precedent. Therefore, this Court concludes and respectfully recommends that Your Honor conclude, that Petitioner's conflict of interest claim should be denied.

## CONCLUSION

For the foregoing reasons, I conclude, and respectfully recommend that Your Honor should conclude, that the petition should be dismissed in its entirety. Since Petitioner's claim presents no questions of substance for review, I conclude, and respectfully recommend, that a certificate of probable cause should not issue. *See Rodriguez v. Scully*, 905 F.2d 24 (2d Cir. 1990) (*per curiam*); *Alexander v. Harris*, 595 F.2d 87, 90-91 (2d Cir. 1979). I further conclude, and respectfully recommend, that the Court should certify pursuant to 28 U.S.C. § 1915(a) that an appeal from this order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438 (1962).

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d),

---

[5] The Court recognizes that once a petitioner has established an actual conflict of interest and that counsel failed to pursue a strategy or tactic because of that conflict, the petitioner's claim does not fail simply because the remaining evidence was overwhelming. *See Curshen, v. U.S.*, 596 Fed. Appx. 14 (2d Cir. 2015), (faulting the district court for rejecting a plausible conflict of interest claim raised under U.S.C. § 2255 where the district court rejected the claim on the ground that "proceeding to trial would have been an implausible defense strategy given the overwhelming evidence," and noting that "an alternative defense strategy is plausible even if unreasonable"). Indeed, "[a] movant need not allege that the outcome of his trial would have been different; a plausible defense strategy is a strategy that could have been pursued even if, in all likelihood, it would have failed." *Id.* Here, however, the nature of the evidence introduced at trial establishes that the defense strategy proposed by Petitioner was not simply unreasonable, it was entirely untenable. Further, it has not been established that there were conflicting interests or that such conflicts as alleged adversely affected counsel's performance. Therefore, it cannot be concluded that an actual conflict existed here.

or a total of seventeen (17) days, *see* Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Cathy Seibel, at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered. Requests for extensions of time to file objections must be made to Judge Seibel.

Dated: 5/23, 2016
White Plains, NY

Respectfully submitted,

Lisa Margaret Smith
United States Magistrate Judge
Southern District of New York

A copy of the foregoing Report and Recommendation has been mailed to the Plaintiff.

15

Case 7:12-cv-06119-CS-LMS   Document 31   Filed 05/23/16   Page 16 of 16